JIM HART and wife MIGGIE HART, v. SHERMAN W. HOWELL

19 So. (2nd) 317            June Term, 1944
October 3, 1944            Special Division A

*Coe and Eggart,* for appellants.
*F. Churchill Mellen,* for appellee.

TERRELL, J.:

This habeas corpus proceeding was brought by Sherman W. Howell, appellee, against Jim Hart and his wife, Miggie W. Hart, appellants, to secure the custody of James Farrell Howell, a minor, nine years of age. The trial court awarded his custody to the appellants during the school term of each year and to Sherman W. Howell during vacation. This appeal is from that award.

So the rightful custody of James Farrell Howell, is the only question with which we are concerned. This Court has so repeatedly adjudicated the custody of a minor child to be in the natural parent, all things being equal, that it would seem to be a waste of effort to dwell on that point. We are convinced that the facts in this case make it an exception to

the rule which the trial court overlooked, necessitating a reversal of his decree.

The petitioner grounds his prayer for custody on the theory that he has acquired a comfortable home, a second wife, and a good job and that he and his wife are better able to support, educate, and bring up the minor than when it was turned over to the appellants. He also charges that the moral environment in which the minor is being brought up is unwholesome.

Summarized, the evidence shows that Sherman W. Howell and Faye Hart Howell were married and lived together intermittently until shortly after the birth of James Farrell Howell in June, 1935. At the time of their final separation, Sherman W. Howell gave James Farell Howell to Faye Hart Howell, who in turn gave him to his maternal grandfather and grandmother, the appellants in this case. Sherman W. Howell and Faye Hart Howell were divorced in 1937; the divorce was uncontested, and the custody of the minor was in no way involved. Faye Hart Howell died under mysterious circumstances in January, 1944, and this proceeding was brought soon after. At this writing, the minor is nine years old and the appellee has not seen it for several years, has rarely visited it; his wife does not know it and he has not contributed enought to its support to supply it in chewing gum.

The decided weight of the evidence shows that the natural father and the mother of the minor were devoid of interest in it and neither of them at any time assumed any real responsibility for it. They both released to the grandfather and grandmother all their interest in it at the accouchment and washed their hands of its upbringing. The appellants assumed full responsibility for its food, clothing, schooling, and training and have at no time grown weary or indifferent to the seriousness of their undertaking. They avow their desire to continue their love and administration to it. It is shown to be devoted to them and prefers to stay with them and they in turn are shown to be devoted to it and have always invited the father to visit it. The father and the stepmother are strangers to the minor and propose to take it from those

whose love for it has been tested and shown to be pure gold. To change the custody of the minor in this case would be a jump in the dark from a happy home to God only knows what kind of one he would land in. We do not think such an experiment should be permitted.

As to the charge of subjecting the minor to unwholesome environment, it is alleged that the mother at the time of her death and for some time before, had operated a resort near Niceville known as Hart's Bar and Cafe, to which was attached a gambling room that the minor was permitted to visit. It is shown however that Hart's Bar and Cafe was a very popular community center. It had a wide reputation for its chicken dinners and seemed to have been the rendezvous for county officers, churchmen, and the general public. True, it's quietude was occasionally broken by a Saturday night fight in which some eyes and teeth were knocked out and some ears bitten off, but these did not detract from its popularity. It is also shown that the grandfather and grandmother visited their daughter at the cafe on different occasions but their home was in the woods miles away and they were never hangers on about the place.

When the froth is blown off of the evidence, the picture left of appellants is that of two good old pioneers, symbols of a type that cleared the forest and settled the country but who have almost vanished from its face. They (the pioneers) were not so sophisticated as their sons and daughters whom they sent to college but their moral convictions were more deeply rooted. It is said that they were a little narrow in their approach but they were more sincere in their loyalties. They were not versed in Latin and Greek but they swore by the efficiency of quinine and calomel and brought up one of the most stable generations of sons and daughters that this country has produced. I never saw one who did not own a Bible, a good rifle, and a sharp knife. He was the primitive realist, extracted his moral code from his Bible and if circumstances required, enforced it at the point of his rifle. From the conditions under which he was molded, he imbibed a high level concept of God and right and justice, so his spiritual anchorage was not shaken by the dishwater casuis-

tries of bunkshooters, hocus-pocus mystics or those who would extract the millennium from ouija boards.

Science and electronics may some day devise a better environment in which to bring up a boy but until they do, we will not cast aside that which has stood the test. The appellants have amply demonstrated their affection for James Farrell Howell while the appellee voluntarily abdicated his responsibility for him at the threshold of his life. Not only that, he manifested little or no interest in him until he instituted this suit after he was eight years old. We are driven to the conviction that an affection generated so late was not inspired by an impulse rooted in love and devotion, the brand required to furnish and prepare its food, wash its diapers, give it paragoric, say "no" one hundred times a day until it enters public school, pay its bills, and plant in its mind and heart from day to day the thousand and one precepts essential to make it a competent citizen and social unit in our scheme of democracy, and love to do it.

The judgment is reversed.

BUFORD, C. J., CHAPMAN and SEBRING, JJ., concur.

ADAMS, J., not participating.