160 So.2d 159 (1964)
Michael C. RITSI, Appellant,
v.
Christine RITSI, now known as Christine Ruschmeyer, Appellee.
No. 63-772.
District Court of Appeal of Florida. Third District.
January 30, 1964.
Rehearing Denied February 18, 1964.
*160 Milledge, Rutledge, Milledge & Simon, Miami, for appellant.
Joseph Pardo, Miami, for appellee.
Before BARKDULL, C.J., and CARROLL and HORTON, JJ.
CARROLL, Judge.
This interlocutory appeal is from a post decretal order modifying a divorce decree as to custody of two children, a boy aged 12 and a girl aged 9. In a separation agreement made prior to the decree, and in contemplation thereof, it was agreed the father would have the custody of the children, with generous visitation rights given the mother.[1] She waived all alimony and *161 child support. The final decree of divorce, filed April 3, 1962, ratified the agreement and granted custody to the father in accordance therewith,[2] and reserved jurisdiction for its enforcement and for matters relating to custody.[3]
Nine months after the divorce the wife moved for a change of custody to her. A hearing was held thereon on January 31, 1963, at which testimony was taken. The chancellor then made a peculiar order, on February 5, 1963. He neither granted nor denied the petition to modify but said: "That the Petition of the plaintiff for custody of the two minor children of the parties hereto be and the same is herein deferred until subsequent to June 1, 1963 and prior to August 15, 1963, at which time this Court shall enter its order determining the care, custody and control of the two minor children." Nine months after the hearing on the petition to modify, in September of 1963 without further trial or testimony the chancellor entered an order granting the petition for modification and changing the custody of the children from the father to the mother. The order gave the father "reasonable rights of visitation" and required him to pay $20 per week child support.
Appellant contends that the order of February 5 amounted to a ruling for the father and was res judicata, and that having so decided the petition for modification the chancellor could not reserve jurisdiction to make a contrary order months later without a new petition and proof of change of circumstances of the parties after the February order. That argument is unsound. The September order was not a modification of the one in February. The wording of the two orders shows the later one in September was a ruling on the wife's petition to modify the final decree based on the hearing and testimony presented the previous January. But the appellant is correct in his contention that because the circumstances of the parties could have changed in the interval, it was not proper to order a change of custody nine months after the hearing without evidence being taken in September relating to the circumstances of the parties and unless the circumstances as they existed at that time required the change for the welfare of the children.
Appellant makes the contention that the evidence did not disclose changes in circumstances to warrant change of custody. The changed circumstances alleged in the petition were that both parties had remarried, and the following:
"5. That the plaintiff, with her present husband, have purchased a new home located at 8345 S.W. 152nd *162 Street, Miami, Florida; and said home has four bedrooms at an approximate purchase price of $27,000.00; that the plaintiff's conditions since the time of the entry of the Final Decree of Divorce has substantially changed in that at the time that she was divorced she had no home or facilities to take care of the two minor children and was employed, and did advise the Court that she was not at that time able to adequately care for and maintain the custody of said two minor children; that her condition has substantially changed with her remarriage and she now has the facilities to adequately and properly care for and maintain the two minor children. Plaintiff is not now presently employed.
"6. It appears also that the two minor children of the parties are presently housed in the facilities with the defendant and his present wife and her five minor children, who range in ages from 4 years to 13 years, consisting of two girls and three boys; and that the facilities of the home are presently inadequate for the proper care, welfare and maintenance of said minor children."
It was shown that before obtaining her divorce the petitioner had decided to marry Ruschmeyer, who owned a hotel in Montauk, Long Island, New York, from which he was drawing an income of $15,000 a year. The petitioner had known him as a regular visitor in Florida, who customarily spent 5 months in winter in Florida and 7 months in the north each year. After her divorce decree in April 1962, the petitioner went to Montauk, New York and worked for Ruschmeyer until they married two months later. As provided for in the divorce decree, the petitioner had the children with her on Long Island that summer. At the hearing in January 1963 it was brought out that Ruschmeyer and the petitioner had decided to remain in Florida and not spend part of each year in New York.
The father's answer to the petition for custody had this to say regarding Ruschmeyer's character and conduct:
"4. The respondent admits the allegations contained in paragraph 4 [which alleged the custody provision of the decree] and further states that your respondent has honored this provision of the decree, and that last summer in 1962, the two minor children went to visit their mother and Gerhardt Ruschmeyer in Montauk, L.I., N.Y., and that Christine Ruschmeyer sent the children home early to Mr. Ritsi, stating that she and Mr. Ruschmeyer were getting a divorce, that they were not getting along due to his and her drinking, that they fought in front of the children in New York, that Gerhardt Ruschmeyer struck Christine Ruschmeyer in front of the children in New York and that their conduct, and Mr. Ruschmeyer's later hospitalization show that they are unfit to remove custody of these children."
The answer also averred:
"Respondent states that he has a good Christian home for these children, that until Petitioner came back they attended Church every Sunday and enjoyed a fine home and are getting along very well. That the neighbors have even remarked about how different the children are since their mother has left them alone and respondent raised them. Respondent would say that he has adequate facilities to care for these children and they should remain where they are.
"That petitioners have an unstable, unstead[y] married life, characterized formerly by excessive drinking; that petitioner Christine Ruschmeyer uses foul language in the presence of the children; she does not require them to go to Church or Sunday School, that she is more interested in material matters than in the welfare of the children, that the older boy and young girl are *163 well adjusted and are of the intelligence that this Honorable Court, out of hearing of counsel, could determine where their welfare lies and their best interest would be served."
Among the facts brought out in evidence at the January 1963 hearing were the following: Ruschmeyer had an income of $15,000 a year. The petitioner had no income. The Ruschmeyers had purchased a four-bedroom house costing $27,000. Ruschmeyer did not testify. The record contains no statement of his feelings or attitude regarding the children, nor any offer by him to undertake all or part of their care and support. The father and his children had continued to live in the family home, which has four bedrooms and two baths. Basically it was a three-bedroom house, but the evidence discloses that a utility room was made into a fourth bedroom, which the two youngest boys occupy.[4] The father is an accountant, and earns between $7,500 and $8,000 a year. His wife is not employed. She devotes full time to caring for the family. No question was presented as to the fitness of the father to have custody. There was no evidence of trouble or friction between the children of the two families living in the father's house, or between the children and the adults there.[5] The children did not testify and were not interviewed by the court on the occasion of the hearing on the petition for modification in January of 1963. The record contains no expression by them of discontent at living in the father's home or of preference to live with the mother.
The rule applied on a petition to modify a decree for custody is that while the welfare of the child or children is of paramount concern, a final decree awarding custody to one parent, being res judicata of the matters involved and known at the time of the decree, should not be modified to change the custody to the other parent except upon materially changed circumstances, or for material facts unknown to the court at time of decree, and then only when it is shown to be essential to the welfare of the child to so order. Thus, in Frazier v. Frazier, 109 Fla. 164, 147 So. 464, in dealing with a petition for modification of a decree as to child custody, in a similar case in which custody had been decreed to one party pursuant to an agreement, the Supreme Court said:
"It is undoubtedly the law of this state that the proper custody of a minor child of divorced parents is a proper subject for judicial consideration at any time by the court which granted the decree of divorce. Meadows v. Meadows, 78 Fla. 576, 83 So. 392. But it is likewise the law that a decree *164 in a divorce suit, fixing the custody of a child of the parents being divorced, whether based on a stipulation entered into by the parties and approved by the court, or whether entered by the court after adversary hearing and determination of a contested issue respecting the matter, is nevertheless a final decree of the court on the conditions then existing, and is not to be materially amended or changed afterward, unless on altered conditions shown to have arisen since the decree, or because of material facts bearing on the question of custody and existing at the time of the decree, but which were unknown to the court, and then only for the welfare of the child. Cariens v. Cariens, 50 W. Va. 113, 40 S.E. 335, 55 L.R.A. 930; Dawson v. Dawson, 57 W. Va. 520, 50 S.E. 613, 110 Am.St.Rep. 800; Milner v. Gatlin, 143 Ga. 816, 85 S.E. 1045, L.R.A. 1916B, 977; 19 C.J. 350.
* * * * * *
"In awarding the custody of a child in the first instance, a very large discretion must be permitted to the chancellor, and the court has many times so recognized that such is the applicable rule of law. * * * But the fact that a child would have better prospects or advantages in the custody of one parent than in that of the other, and that one is able to do much for the child that the other is not, has never been considered as a controlling factor in determining the question of custody, if all the child's needs are to be supplied in either situation. Kenner v. Kenner, supra [139 Tenn. 211, 201 S.W. 779, L.R.A. 1918E, 587.]"
See Gedney v. Gedney, 117 Fla. 686, 158 So. 288; Jones v. Jones, 156 Fla. 524, 23 So.2d 623; Sayvard v. Sayward, Fla. 1949, 43 So.2d 865; 10 Fla.Jur., Divorce § 264.
When a father has been granted custody under a divorce decree, remarriage of the mother and acquisition by her of a suitable home are not changes of circumstances which of themselves justify a change of custody from the father to her. Phillips v. Phillips, 153 Fla. 133, 13 So.2d 922; Belford v. Belford, 159 Fla. 547, 32 So.2d 312.
Also, when by remarriage or other circumstances the mother becomes or is more affluent than the father who has custody, and thus in a position to do more financially for a child or children, that has not been considered a controlling factor unless the children are not being properly or adequately cared for. Frazier v. Frazier, supra; Fields v. Fields, 143 Fla. 886, 197 So. 530.
A change of decreed custody is justified in such improved circumstances of the wife when coupled therewith there are circumstances relating to the present custody which are improper and harmful to the child or children so as to make it manifest that a change of custody is essential for their welfare. Phillips v. Phillips, supra; Hart v. Howell, 154 Fla. 878, 19 So.2d 317; Jones v. Jones, supra. Compare Dobbs v. Kelly, Fla. 1949, 39 So.2d 479, and Prevatt v. Penny, Fla.App. 1962, 138 So.2d 537, which show examples of the rule just stated.
In Dobbs v. Kelly, supra, a similarly improved situation of a mother was coupled with improper care of a child by the one having custody, including allowing the small child to be exposed to danger. There the father, to whom the custody had been decreed, left the child in care of grandparents who operated a service station and sandwich stand on a busy highway. One of them worked the place in the daytime and the other one worked at night, with the result that the child was allowed to run around unsupervised in a dangerous highway area. Also, in Prevatt v. Penny, supra, there was improper care of a child by a father to whom custody had been awarded. In that case the father had remarried to a *165 woman who had five children. His child and the other five, making six children in all, were required to sleep in one bedroom.
In the instant case the mother submitted her remarriage and her new home in Florida as improved circumstances,[6] but they were not complemented by a showing of unfitness of the father or of neglect or improper care of the children by him. In that respect this case is to be distinguished from Dobbs v. Kelly and Prevatt v. Penny, supra. It is not as a matter of law improper care of children for two adults and seven children to occupy a dwelling house consisting of four bedrooms and two baths; and the record did not show disunity or friction in the father's household.
It is evident that the experienced chancellor made a conscientious effort to reach a proper decision on this case which presents considerable difficulty. And it is only with great reluctance that we reverse the chancellor's order relating to custody of children. We are, however, impelled to the conclusion that the two principal grounds on which the chancellor's order was based, which were findings that the two adults and seven children were living in a two-bedroom house and that there was friction in the family, were not correct, and not supported by the evidence.
The fact that the change of custody was made on a misunderstanding as to the size of the house and as to friction in the father's home, would of itself require reversal. We could agree with the chancellor if, as he found or assumed, the father with his wife and seven children were living in a house having only two sleeping rooms and in an atmosphere of conflict, and would uphold such findings if the record showed evidence thereof. While we do not know whether the chancellor's decision would have been the same, knowing the house to have four bedrooms and with no showing of friction in the household, we conclude that to so hold under those facts would be contrary to the law as pronounced in the decisions cited herein.
Other circumstances or grounds stated in the order changing custody (fitness of the mother, preference of a mother as custodian, benefit of a mother's influence, and disapproval of extended visitation as being divided custody) were not changes occurring after the decree but were circumstances which were present and known to the court when the final decree was entered. We are inclined to agree with the chancellor that the extensive visitation provided for in the decree may amount to "divided custody," which is not considered a good policy. Rudolph v. Rudolph, Fla.App. 1962, 146 So.2d 397. But the remedy for that, if one is needed, is to reduce the visitation rather than to change the custody.
Accordingly the order of September 23, 1963 is affirmed wherein it discharges the rule to show cause against the respondent relating to failure to sell the house, and the order is reversed as to the provisions thereof which granted the mother's petition for modification of the decree as to custody and which ordered a change of custody from the father to the mother, and as to the provisions for child support. This has the effect of leaving the matter of custody as it was provided for in the final decree. This ruling by its nature is without prejudice to subsequent modification of the decree, as to custody and as to visitation, for sufficient changes of circumstances if they should occur.
Affirmed in part and reversed in part.
NOTES
[1] The agreement included the following:

"Whereas unhappy differences have arisen between the said parties and that the husband and wife have heretofore ceased to live together as man and wife, and irreconcilable differences which have arisen have rendered it impossible for them to hereinafter live together as man and wife, and a suit for divorce is pending, being case No. 62C-1537, and the husband is in a position to file a counterclaim,
* * * * *
"Now, Therefore, in consideration of the covenants, agreements and considerations hereinafter set forth, the parties mutually agree as follows:
"That the home located at 7950 S.W. 16th Street, Miami, Florida, including furniture and furnishings, will be sold and the money divided equally between the parties.
* * * * *
"That the husband gets complete custody, care and control of the two children of the parties, namely Jody Joseph Michael Ritsi and Karen Michelle Ritsi, and the wife gets rights of visitation as follows: the wife may have custody of the children during the vacation period in the summer from June through August, then any time the wife is in Florida after her winter vacation and is not working and has a proper home, she may have the children from Friday nights through Sunday nights."
[2] The decree provided:

"3. That the property settlement agreement executed the 6th day of March, 1962, by and between the parties hereto, and filed herein, be, and the same is hereby ratified, affirmed, and approved by this Court, and said property settlement agreement is hereby made a part of this decree.
"4. That in accordance with said property settlement agreement filed herein, the defendant is hereby awarded the complete custody, care and control of the parties hereto, Jody Joseph Michael Ritsi and Karen Michelle Ritsi, with rights of visitation to the plaintiff as follows: plaintiff may have custody of said two minor children during the vacation period each year in the summer from June through August, and at any time the plaintiff is in Florida during the winter months and is not working and has a proper home, plaintiff may have the said two minor children from Friday nights through Sunday nights.
"5. That in accordance with said property settlement agreement the home, furniture and furnishings located at 7950 S.W. 16th Street, Miami, Florida, belonging to the parties hereto, shall be sold and the money divided equally between the parties hereto."
[3] "That jurisdiction of this cause is hereby retained by this Court for such orders and decrees as the Court may deem meet and proper, for the purposes of requiring the parties to perform the requirements of this final decree, and to matters pertaining to the two minor children of the parties hereto."
[4] The petition for modification included a claim against the father for default for not selling the house. A rule to show cause was issued thereon against him. At the hearing in January 1963 it was brought out that the father had been trying to sell but had not been able to sell at a favorable price. On that basis the rule was discharged. The showing was that the house would be sold when a good sale could be effected and the proceeds then divided between the original parties, and that the father planned to obtain another house.
[5] The record reveals instances of friction in the mother's family which concerned the children. The mother testified that Ruschmeyer did not drink and had not been drinking for six months. Before that, when the Ruschmeyers had the children for the summer in 1962, the wife found it necessary to send them back to Florida early because of her husband's drinking and the situation when he was taking a liquor cure. Also, while this appeal was pending, after the children had been transferred to the mother pursuant to the September 1963 order of the circuit court, the mother found it necessary for their protection to redeliver the children to their father because Mr. Ruschmeyer while under the influence of liquor had ordered her to get them out of the house and had threatened to put them and her out if she did not. She packed some clothes for them and delivered the children to the father. On hearing the father's motion disclosing those facts, we granted a stay as to custody pending decision of this appeal, and we advanced the cause for argument.
[6] The value of the wife's improved circumstances was subject to some question. She knew before her divorce she was going to marry Ruschmeyer. The unexpected change of circumstances was their decision to live in Florida year round. Her superior financial ability with reference to the children is in doubt, there being no showing that Ruschmeyer was willing to support the children thus generously. Also, the wife was to use the father's ordered support for the children rather than to supply it from her larger store.