McCAIN, Judge
(dissenting):
I must respectfully dissent.
This interlocutory appeal summons us once again to the Herculean task of cleaning an Augean stable smothered in the debris of a post-decretal child custody hearing. The appellant-mother questions the trial court’s order on custody of two minor children. In this instance I would reverse.
*654 The final decree of divorce was entered March 21, 1967, granting a divorce to the appellee-father, incorporating by reference an agreement between the parties dated February 17, 1967, which reads in pertinent part as follows:
“6. It is further agreed between the parties that the custody of the two minor children, John M. Potter, II, and Jennifer Jay Potter, shall he joint with the parties, the Husband having the responsibility and custody during the week and the Wife shall have custody from Friday at 5:00 o’clock P.M. until Sunday at 7:00 o’clock P.M. each week. That during the summer school vacation months the Wife will have the custody of the children and the Husband may have reasonable visitation rights at reasonable times and places. That during the school year the Husband will not be responsible or pay any maintenance and support for the minor children; however, during the summer school vacation months the Husband will pay to the Wife the sum of ONE HUNDRED ($100.00) DOLLARS per month as maintenance and support of the minor children. That the Wife and Husband shall alternate visitation rights for certain holidays such as Christmas, Thanksgiving, Easter and birthdays, whatever convenient to the children’s schedules. That it is agreed that the children shall reside with their respective parents in Palm Beach or Hendry Counties and nowhere else except by mutual agreement between the parties and/or order of the Court.” (Emphasis supplied.)
Upon entry of the original decree, the two children were ages six and eight, the mother was working and living in a rented house in Palm Beach County. The father was living in Clewiston, Florida. Axiomatically, the children were shuttled back and forth across highway 80.
Subsequently, the father married and in addition to a wife, acquired a stepchild. In turn, they have had a child of their own and continue to live in Clewiston. The mother likewise remarried, gave birth to a child and now also lives in Clewiston in a three bedroom, air-conditioned home with pool, patio and maid.
On July 5, 1968, the mother filed a petition seeking modification of the custody provision. The father cross petitioned. After hearing thereon, the trial court on August 1, 1968, modified the final decree by ordering:
“It is thereupon ORDERED and ADJUDGED :
1. That the father shall have the custody of the two minor children during the school year from one week prior to the commencement of the school term until one week after the termination thereof, with the exception that the mother shall have the children with her the second weekend of every month during the school term, from Friday at 5:00 p. m., until Sunday at 6:00 p. m. The transportation of the children shall be the responsibility of the father.
2. The mother shall have the custody of the two children during the summer, commencing one week after the close of the school term, until one week prior to the commencement of the next term, with the exception that the father shall have the children with him the second weekend of every month (during the summer) from 5:00 p. m., Friday until 6:00 p. m., Sunday, and the last two weeks in July so that he may have a vacation period with them. The transportation of the children shall be the responsibility of the father.
3. The parents shall alternate the Christmas and Easter vacations, one parent having the children for the Christmas vacation and the other for the Easter vacation, commencing with the mother having the children for the Christmas vacation 1968.
4. During the summer when the mother has the custody of the children *655 the father shall pay her $100.00 per month child support, without deduction for the time when the children are with the father during the summer.
5. The plaintiff is directed to pay the delinquency of $100.00 child support and to make the appropriate change in the existing life insurance policy to comply with the agreement between the parties incorporated in the Final Decree of divorce, all within thirty days from date hereof.
6. The provisions of paragraph 2 shall not apply during the current summer since it is nearly over. However, the father shall have the children with him during the weekend of August 16, 17 and 18, 1968 from S :00 p. m., on Friday, August 16, 1968 until 6:00 p. m., on Sunday, August 18, 1968.
7. Each parent shall have reasonable visitation rights with the children during the time the other parent has custody of them.
8. This proceeding was primarily concerned with the custody change, and only incidentally with the delinquent child support and insurance policy modification. The defense against the plaintiff’s counter petition for modification required little or no additional effort than was required to prosecute the defendant’s petition for modification. However, as to the enforcement of the delinquencies, the defendant is entitled to a reasonable attorney’s fee which the Court assesses in the amount of $200.00. Said sum shall be paid by the plaintiff within sixty days from date hereof.”
Significantly, the modification order found in part:
“The parties agree, as does the Court, that the frequency of the change from one household to the other is detrimental to the children and should be reduced. However, the parties designed the general custody pattern * * * the children’s welfare would be well served in either home. The Court finds there has been no substantial change in circumstances which would authorize the Court in changing the general pattern of custody. Such a change as is shown by the defendant has been held insufficient. Ritsi v. Ritsi, [Fla.App.l 160 So.2d 159.”
Obviously, by reducing the number of weekends of the mother’s custody, the court was attempting to follow the language of Ritsi stating that the remedy for what may have amounted to “divided custody” (emphasis added) was reduction of visitation rights rather than a change in custody. However, Ritsi did not involve divided custody since the original decree awarded the father “complete custody, care and control”, with liberal visitation rights to the mother. Thus, that change amounted to nothing more than a reduction of visitation rights.
Sub judice, the final decree incorporated the agreement of the parties which specified “that the custody of the two minor children * * * shall be joint with the parties” (emphasis added) with responsibility and custody divided on a split of 5 to 2 days out of each week. Since the lower court found there was “no substantial change in circumstances,” yet modified the joint custody of the parents, in the manner described, we are squarely faced with the rule that a court cannot give custody to one parent where there has been a joint custody award, without finding a change in circumstances. This was prescribed in Say ward v. Sayward, Fla. 1949, 43 So.2d 865, involving a joint custody decree, where it was stated:
“ * * * A decree fixing the custody of minor children, whether based on a stipulation between the parties or entered on evidence adduced by the parties at an adversary hearing on the issues of custody, constitutes a final decree of the court on conditions then existing. Such a decree may not be substantially amend *656 ed or changed thereafter, except upon a showing of materially altered conditions arising subsequent to the entry of the decree or of material facts bearing on the question of custody which were in existence at the time of the decree but were unknown to the court on the date of its entry. And even in such cases a substantial amendment or change in the decree should not be made except for the welfare of the child. Frazier v. Frazier, 109 Fla. 164, 147 So. 464; Belford v. Belford, 159 Fla. 547, 32 So.2d 312; Phillips v. Phillips, 153 Fla. 133, 13 So.2d 922; Jones v. Jones, 156 Fla. 524, 23 So.2d 623.” (Emphasis supplied.)
There, the original decree granting divided or joint custody was rendered after testimony and hearing on the fitness of the parties, both agreeing that each was fit. The review sought 51 days later surrounded the alleged mistake of the trial court. The court noted, however, that its decree was based upon facts then existing and not upon any mistake on its part. The court also concluded that no change in circumstances having been shown, any consideration directed to treating the petition as one for modification reveals it falling short of the minimum requirements quoted above.
Obviously, the trial court in our case was trying to alleviate an intolerable sitúa • tion and I agree with both that portion of the court’s order and with the parents that the initial custody arrangement has been and is detrimental to the welfare of these children. The fact that the joint custody arrangement in this instance has not worked out and proved detrimental to the children’s welfare is in itself a material change in circumstances justifying a change in the final decree. Since neither parent was given sole custody of th^ children in the initial decree a determination now becomes necessary as to which parent should have permanent custody with reasonable visitation rights vested in the other. The fact that the father essentially had the children five days a week with the mother having them two days a week and summers is not the controlling factor but only a circumstance that should be considered in determining this vital issue.
Apropos, the nature of the divided custody under consideration, when viewed in light of surrounding circumstances, is sufficient for invocation of the premise that divided custody is not looked upon with favor. Rudolph v. Rudolph, Fla.App.1962, 146 So.2d 397; Jones v. Jones, 1945, 156 Fla. 524, 23 So.2d 623; Phillips v. Phillips, 1943, 153 Fla. 133, 13 So.2d 922; Stewart v. Stewart, 1946, 156 Fla. 815, 24 So.2d 519. Rudolph stated: “Divided custody which involves periodic removal from familiar surroundings is not desirable nor conducive to a child’s welfare.” Hurst v. Hurst, 1946, 158 Fla. 43, 27 So.2d 749; McCann v. McCann, 1934, 167 Md. 167, 173 A. 7; McLemore v. McLemore, Ky. 1961, 346 S.W.2d 722; Bronner v. Bronner, Tex.Civ.App.1954, 278 S.W.2d 530; Morgan v. Morgan, 1956, 139 Cal.App.2d 704, 294 P.2d 45.
This solidifies my conclusion that a change in the custody arrangements is both desirable and justified, with the welfare of the children being the primary consideration determinative of the next and ultimate issue.
Both parties, father and mother, submitted numerous witnesses, inclusive of friends and relatives, whose testimony was essentially favorable to the one calling them.
This is not uncommon in cases of this nature. Nevertheless, when the chaff is separated from the wheat, the testimony on the welfare and best interests of the children as submitted by Robert Keith Bernston, a child psychologist who interviewed and tested them, stands omnipotently, as follows:
“ * * * I feel that these children ought not to be put in the bind where they have to choose between these par *657 ents. They should not be put in the position where they feel insecure because of their relationship with either of the parents.
Obviously, that hasn’t been done, so that some outside influence has to be brought to bear on it. If these parents would reach a mutual agreement, this would be in best interest of the children, if this could be done. I think the Court ought to enjoin them from retaliating and using the children as weapons.
I basically believe that this little girl needs the relationship with the mother very profoundly and that she will be most affected by the disruption of it. John will be too, but he has reached a greater degree of maturity and I think can handle it better, but I think from what I know, it is my opinion that these children would be better off, it would be in their better interest to remain writh the biological mother" (Emphasis supplied.)
In viewing the evidence through un-tinted glass I come to the inescapable conclusion that the welfare of the children would be served by their primary custody being placed with their mother subject to reasonable rights of visitation given to their father, which could easily consist of one weekend a month, a reasonable period during the summer months and alternation of major holidays. There could also be a provision that neither party attempt to alienate the affections of the children towards the other. When the trial court changed the custody established by the final decree upon a finding that “the parties designed the general custody pattern * * * there has been no substantial change in circumstances which would authorize the Court in changing the general pattern of custody * * * ”, the trial court completely ignored the requirement of Sayward that such change should not be made except for the welfare of the children. Because the father had custody more than the mother, the trial court simply expanded this time. In this case the untainted evidence establishes the welfare of the children would best be served by them being with their mother.
Apart from the adverse psychic effect which the initial custody arrangement is visiting upon the children, I also conclude the mother is now in a position to give these children her full time attention, love and devotion. The mother’s acquired physical surroundings and atmosphere leave little doubt but what the children could and would benefit by them. True, the mere affluence acquired by a mother through remarriage is not a controlling factor, Ritsi, however such improved circumstances when coupled with those relating to present custody which are improper or harmful to the children can be sufficient to justify a change. Frazier v. Frazier, 1933, 109 Fla. 164, 147 So. 464; Fields v. Fields, 1940, 143 Fla. 886, 197 So. 530; Phillips v. Phillips, 1943, 153 Fla. 133, 13 So.2d 922; Hart v. Howell, 1944, 154 Fla. 878, 19 So.2d 317.
Additionally, I am mindful that our law strongly favors the placing of custody of minor children with their mother. Frye v. Frye, Fla.App.1967, 205 So.2d 310; Jones v. Jones, supra. The trial court found “the children’s welfare would be well served in either home.” Giving credence to the rule that when all things are equal, the mother of children of tender years is best suited to provide the affection, care, and companionship suitable to the needs of the children, Fields v. Fields, supra, and Hurst v. Hurst, supra, the pleadings and evidence submitted herein show no reason for departure therefrom. For this reason the children should be placed primarily with their mother.
The court heard testimony from some seventeen witnesses and I do not feel a remand for taking of further testimony would help. The parties do not question that portion of the order treating child support, delinquent child support, insurance *658 policy modification and award of attorney’s fee. Neither do I.
I would therefore reverse and remand this cause for entry of an order consistent with the views expressed herein.