767 So.2d 513 (2000)
Deborah PEREZ, Appellant,
v.
Jorge M. PEREZ, Appellee.
No. 3D99-2182.
District Court of Appeal of Florida, Third District.
July 5, 2000.
Rehearing Denied August 16, 2000.
*514 Marsha B. Elser, Miami; Cynthia L. Greene, Miami, for appellant.
Barranco, Kircher & Vogelsang, P.A., Miami; Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A. and Joel S. Perwin, Miami, for appellee.
Before COPE, GREEN, and FLETCHER, JJ.
GREEN, J.
The former wife appeals an order changing the primary residential custody of two of the parties' three minor children from her to the former husband. She essentially maintains that the trial court abused its discretion in granting the former husband's petition for modification of custody where the evidence relied upon by the trial court failed to establish a substantial change in circumstances and that the best interests of the two minor children would be served by the modification.[1] We agree and reverse.
The parties were divorced in 1995. Pursuant to the terms of their marital settlement agreement, which was later incorporated into the final judgment of dissolution of marriage, the former wife was named the primary residential parent of the parties' three minor children. The marital settlement agreement also provided that "neither Party shall remove the permanent residence of the minor children from Dade, Broward or Palm Beach Counties, Florida, without the express written permission of the other Party or in the absence of an order issued by a court of competent jurisdiction."
After entry of the final judgment of dissolution, the former wife expressed a desire to relocate from Miami with the minor children to Park City, Utah. The parties had vacationed there on occasion with the children during the course of their marriage. In September 1996, the former husband agreed to the former wife's request to relocate with the children to Utah. It was further agreed that the relocation would take place on or about June 2, 1998. Their agreement was duly reduced to writing entitled "Addendum and Modification to the Separation and Marital Settlement Agreement".[2] This addendum agreement was approved by the court and incorporated as an order of the court.
In reliance upon the addendum agreement, the former wife sold her Miami home, purchased 18 acres of land in Park City, Utah and commenced construction of a 12,000 square foot home thereon for herself and the three minor children. The former wife oversaw the construction of her Utah home and thus had numerous occasions to travel to and from Utah. During her travels to Utah, the minor children remained in Miami with the former husband, usually from Wednesdays through Mondays. According to the former husband, it was during this time that the children began to express their desires to remain in the Miami area. Thereafter, the *515 former husband had the minor children, then ages 15, 12 and 9, write a letter stating their preference to remain in Miami and had his secretary present for the purpose of attesting to and notarizing the letter. The former husband then turned this letter over to his legal counsel.
There is no record evidence that this letter or its contents was ever disclosed to the former wife by the former husband prior to the commencement of this proceeding. Rather, approximately two weeks prior to the agreed upon departure date for the former wife and children, the former husband filed a petition for modification of custody and sought an emergency injunction enjoining the former wife from relocating the children to Utah. The trial court denied the emergency motion for an injunction. The former wife and children then moved to Utah as scheduled in 1998.
After their relocation to Utah, the evidentiary hearing on the former husband's petition for modification of custody came on for hearing by the trial court in the spring and summer months of 1999. Although both the former wife and former husband presented evidence as to shortcomings in each other's parenting skills, the trial court essentially discounted the same for purposes of the petition. Indeed, both parties acknowledged and the record fully supports that both of them are very decent, loving, and caring parents who are each capable of providing these children with a very stable, nurturing and fit home environment. Moreover, the evidence unequivocably established that the former husband's primary motivation for seeking a change in custody was the children's preference and his belief that an urban area such as Miami offered a better cultured environment for the children than rural Utah.[3] At the final hearing, however, the guardian ad litem reported that the parties' daughter (age 16) had changed her mind and had expressed a desire to remain with the former wife in Utah while the parties' two younger sons (ages 15 and 11) had maintained their preference of returning to Miami to reside with the former husband. The guardian ad litem ultimately recommended that the petition for modification be granted and that all three of the children be returned to Miami to reside with the former husband. Because the trial court deemed the guardian's recommendation and report to be based upon inadmissible hearsay, see Scaringe v. Herrick, 711 So.2d 204, 204-05 (Fla. 2d DCA 1998), the court decided to interview each of the children separately, in camera, with the permission of both parents.
At the conclusion of the hearing and the court's in camera interview with each of *516 the children, the court issued its order on the former husband's petition for modification of custody that is the subject matter of this appeal. After finding the children to be extremely articulate and intelligent and praising the parties for doing an excellent job in raising them, the trial court granted the former husband's petition as to the parties' two sons, but denied the petition as to their daughter. The court's decision was overwhelmingly based upon the articulated preference of each of the children. The court found the children's intelligence and maturation level to be sufficient enough for it to modify custody in accordance with their respective preference. The only other finding of the court to support its decision was that the children had always resided in Miami and that there had been a decline in the academic grades of the parties' oldest son since moving to Utah. The former wife's motion for rehearing of this order as well as a stay were both denied by the lower court. We granted a stay of the order pending our appellate review.
A parent seeking to modify a prior custody award bears the extraordinary burden of demonstrating a substantial change in circumstances since the entry of the initial custody decree and that the child's best interest or welfare will be promoted by the change. See Sullivan v. Sullivan, 736 So.2d 103, 105 (Fla. 4th DCA 1999); Young v. Young, 732 So.2d 1133, 1134 (Fla. 1st DCA 1999); Chant v. Chant, 725 So.2d 445, 447 (Fla. 2d DCA 1999); Schweinberg v. Click, 627 So.2d 548, 551 (Fla. 5th DCA 1993). In applying this two-prong test for modification, it is insufficient that the petitioning parent may possess the superior financial resources or that the child may be "better off" with the petitioning parent. See Young, 732 So.2d at 1134; Chant, 725 So.2d at 447. For that reason, for purposes of a modification of custody, Florida courts have required proof that a child's continuing residence with the custodial parent would be detrimental to or have an adverse impact upon the child. See Kilgore v. Kilgore, 729 So.2d 402, 406-07 (Fla. 1st DCA 1998) (modification order to father reversed where trial court made no findings that mother's relationships with several men had affected children in any way or any finding that mother's parenting skills had deteriorated since entry of the final judgment of dissolution); Enyeart v. Stull, 715 So.2d 320, 321 (Fla. 2d DCA 1998) (holding that "The petitioner must prove both that a substantial change in circumstances has occurred since the last permanent custody order, and that the custody modification would `so clearly promote or improve the child's well-being ... that maintaining the status quo would be detrimental to the child's overall best interests.'") (citation omitted, emphasis in the original); Metcalfe v. Metcalfe, 655 So.2d 1251, 1252 (Fla. 3d DCA 1995) (evidence supported modification where "this evidence tended to show that there has been a substantial and material change of circumstances since the final judgment of marriage dissolution of such a magnitude that it would be detrimental for the children to remain in the custody of the husband, and that the best interests of the children would be promoted if the wife, who was since remarried, obtained custody of the children"); Elkins v. Vanden Bosch, 433 So.2d 1251, 1253 (modification order reversed where "there is no finding that the mother is any less fit a parent than she was when given custody of the children in 1977 and no finding that the children will be detrimented if custody is not changed").
Despite the special concurrence's protestations to the contrary, the requirement that the non-custodial parent demonstrate that a child will suffer detrimental harm if custody is not changed, does not somehow convert the well-established two-prong test for modification of custody into a three-part test. Specially concurring opinion at 19. Rather, a showing of detriment or inadequacy of care has consistently been required by the courts of this state to effectuate a modification of custody and indeed has clarified for both the bench and *517 the bar what actually constitutes a "substantial change in circumstances."[4]See e.g., Hunter v. Hunter, 540 So.2d 235, 237 (Fla. 3d DCA 1989) (stating that: "the trial court erred in awarding sole parental responsibility to be mother absent a specific finding that `shared parental responsibility would be detrimental to the children,'") (quoting § 61.13(2)(b)2, Fla. Stat. (supp.1986); and Hicks v. Hicks, 511 So.2d 628 (Fla. 2d DCA 1987); Nichols v. Nichols, 432 So.2d 648 (Fla. 1st DCA 1983); Holland v. Holland, 458 So.2d 81 (Fla. 5th DCA 1984)). Indeed, we have located no Florida cases which have upheld a modification of custody in the absence of a showing of detriment and none of the cases relied upon by our colleague in the specially concurring opinion supports a contrary conclusion.
Moreover, the special concurrence's assertion that the detriment requirement would somehow encourage acrimony, is simply wrong. In fact, the opposite is true. "Unlike proceedings to modify awards of child support or alimony, the non-custodial parent seeking to modify a prior award of custody `carries an extraordinary burden.'" Zediker v. Zediker, 444 So.2d 1034, 1035 (Fla. 1st DCA 1984)(quoting McGregor v. McGregor, 418 So.2d 1073, 1074 (Fla. 5th DCA 1982); and citing Elkins v. Vanden Bosch, 433 So.2d 1251 (Fla. 3d DCA 1983)). The requirement that the non-custodial parent demonstrate detriment or harm to the child is the basis for this enhanced burden and is in accord with sound policy recognition that after a divorce and an initial award of custody, it is in the best interests of children to have as much stability in their lives as possible. A modification proceeding involving an otherwise fit custodial parent does not promote such stability. If, as in this case, the custodial parent remains perfectly fit and able to continue to provide for the needs and welfare of the minor children, the non-custodial parent should not be permitted to entice the children with certain benefits and advantages not readily accessible to the custodial parent. By eliminating the detriment requirement, as the concurring opinion seemingly suggests, we would actually be lowering the burden of proof for a modification petition and encouraging more modification proceedings between two otherwise fit parents in the process. This we will not do. As poignantly stated by our sister court, a change of custody is appropriate only when, having considered all of the factors listed in section 61.13(3), Florida Statutes:
[T]he trial court finds that a change in custody will so clearly promote or improve the child's well-being to such an extent that any reasonable parent would understand that maintaining the status quo would be detrimental to the child's overall best interests. This test involves more than a decision that the petitioning parent's home would be `better' for the child, and requires a determination that there is some significant inadequacy in the care provided by the custodial parent.
Young, 732 So.2d at 1134 (citing Gibbs v. Gibbs, 686 So.2d 639, 641 (Fla. 2d DCA 1996)). We fully agree.
In this case, without question, the former husband's petition for modification of custody was motivated solely by his change of heart about the former wife's decision to relocate the children to Utah. In the absence of compelling circumstances, however, a custodial parent's move to a foreign state is not itself a substantial change of circumstances which would support a change of custody. See Zugda v. Gomez, 553 So.2d 1295, 1296 (Fla. 3d DCA 1989). Hence, the mere fact that the custodial parent in this case was relocating the children from the city in which they had always resided is insufficient *518 to sustain a modification of custody. Thus, in order to prevail on his petition for modification of residential custody, the former husband bore the dual burden of demonstrating that the Utah move was somehow detrimental to the children and that their best interests would somehow be served by a change in custody to him. Id.
After carefully reviewing the trial court's detailed order, it is abundantly clear to us that the court based its order primarily upon the articulated preferences of the parties' children. The trial court made no factual determinations that the former wife's agreed upon relocation to Utah posed any detrimental or adverse effects upon the children other than the fact that there had been a decline in the grades of the parties' eldest son. Although the record evidence did reflect a significant decline in the older boy's grades during the second quarter of the academic year,[5] both parents acknowledged at the hearing below that their son's grades had gone up by the third quarter of the academic school year.[6] Thus, the lower court's finding that the move to Utah had an adverse effect upon the parties' oldest son was simply not supported by competent substantial evidence and thus could not support its modification order. DeLapouyade v. DeLapouyade, 711 So.2d 1202, 1203 (Fla. 2d DCA 1998); Ward v. Ward, 742 So.2d 250, 254 (Fla. 1st DCA 1996).
We therefore turn our attention to the lower court's primary and remaining cited reason for the modification orderthe stated preference of the children. Generally speaking, the stated preference of a child in a modification proceeding is entitled to some weight if the child possesses sufficient maturity and understanding to make an intelligent choice. See Greene v. Kelly, 712 So.2d 1201, 1202 (Fla. 5th DCA 1998); Holmes v. Greene, 649 So.2d 302, 305 (Fla. 1st DCA 1995); Gaber v. Gaber, 536 So.2d 381, 381-82 (Fla. 3d DCA 1989); Berlin v. Berlin, 386 So.2d 577, 579 (Fla. 3d DCA 1980); Pollak v. Pollak, 196 So.2d 771, 772 (Fla. 3d DCA 1967); see also § 61.13(3)(i), Fla. Stat. (1997). However, under Florida law,[7] the stated preference *519 of a child who possesses the requisite maturity to make an informed decision, without more, has never been found to be sufficient to sustain a change in primary residence. See Chant, 725 So.2d at 447 (holding that "[s]tanding alone, a child's reasonable preference is not enough to justify a court ordered change of residence."); Heatherington v. Heatherington, 677 So.2d 1312, 1314 (Fla. 2d DCA 1996) (a child's preference, without more, will not justify a change in custody); Holmes, 649 So.2d at 305 (concluding that "[e]ven if the evidence were sufficient to establish that the [10 year old twin] girls possessed the necessary character traits to make such a choice, a child's wishes, alone, can never be sufficient to sustain a change in primary residence."); Schweinberg, 627 So.2d at 551-52 (holding that "[t]he children's wishes alone, however, cannot support a change in custody."); Elkins v. Vanden Bosch, 433 So.2d 1251, 1252 (Fla. 3d DCA 1983) (reasoning that "Even assuming, arguendo, that twelve and fifteen-year-old children possess sufficient intelligence, understanding and experience to make a mature choice between their parents, their stated preference to live with a particular parent, while a factor to be considered and weighed, cannot control the disposition of custody.") (citations and footnote omitted). As we explained in Elkins:
The law does not give children the unfettered discretion to choose the parent with whom they will live, or gratify the wishes of children at the expense of the rights of a parent. Were it otherwise, the law would encourage manipulation by both children and parents and foster a breakdown in discipline, neither of which is in the best interests of children.
433 So.2d at 1253 (citations omitted). The reasonable preference of a child is indeed but one of many factors to be considered by a court pursuant to § 61.13(3), Fla. Stat. (1997).[8] Clearly then, the children's stated preferences in this case, without *520 more, could not support the trial court's modification of custody order. Since there was no other viable or compelling reason relied upon by the court in this case, we find the court's modification order with regards to the parties' two sons to be an abuse of discretion. We therefore reverse this order as it pertains to the parties' two sons and remand with directions that the court reinstate the former wife as their primary residential parent and we affirm the lower court's denial of the modification as it pertains to the parties' daughter.
Reversed and remanded in part with directions and affirmed in part.
FLETCHER, J., concurs.
COPE, J. (specially concurring).
I agree with the result and with much of the reasoning of the majority opinion, but disagree with that part of the opinion which indicates that in order to obtain a change of child custody, it is necessary to show that the present placement is detrimental to the child.

I.
I agree that at bottom this change of custody order is based on the stated preference of the two boys and that reversal is required under Elkins v. Vanden Bosch, 433 So.2d 1251, 1252-53 (Fla. 3d DCA 1983).

II.
I agree with the majority opinion that there is a two-part test for modification of child custody: the movant must demonstrate "[1] a substantial change in circumstances since the entry of the initial custody decree and [2] that the child's best interest or welfare will be promoted by the change." Majority opinion at 516 (citations omitted); see Spradley v. Spradley, 335 So.2d 822 (Fla.1976).
I disagree with that part of the opinion which says "for purposes of a, modification of custody, Florida courts have required proof that a child's continuing residence with the custodial parent would be detrimental to or have an adverse impact upon the child." Majority opinion at 516 (citations omitted). The majority opinion goes on to state that a showing of detriment is a legally required element in every case: "in order to prevail on his petition for modification of residential custody the former husband bore the dual burden of demonstrating that the Utah move was somehow detrimental to the children and that their best interests would somehow be served by a change in custody to him." Majority opinion at 518 (citation omitted).
The requirement that the moving party demonstrate "detriment" converts the two-part test for change of child custody into a three-part test: (1) substantial change of circumstances, (2) best interest of the child, and (3) detriment in the present placement. The only Florida jurisdiction to routinely apply that three-part test is the Second District. See Gibbs v. Gibbs, 686 So.2d 639, 641-45 (Fla. 2d DCA 1996). Neither the Florida Supreme Court nor this court have held that a showing of detriment is a required element in a motion for change of child custody.
A fair summary of the Florida case law is as follows:
In order to warrant uprooting a child, there must be competent substantial evidence that there has been a material change in the circumstances and that the best interest and welfare of the child will be promoted by the change of primary residential responsibility. Gutierrez v. Medina, 613 So.2d 528 (Fla. 3d DCA 1993); Buttermore v. Meyer, 559 So.2d 357 (Fla. 1st DCA 1990); Sanders v. Sanders, 376 So.2d 880 (Fla. 1st DCA 1979), cert. den. 388 So.2d 1117. See also Jones v. Jones, 156 Fla. 524, 23 So.2d 623 (1945); Brush v. Brush, 414 So.2d 37 (Fla. 3d DCA 1982); Adams v. Adams, 385 So.2d 688 (Fla. 3d DCA 1980). But see Goodman v. Goodman, 291 So.2d 106 (Fla. 3d DCA 1974)....

*521 In Grumney v. Haber, 641 So.2d 906 (Fla. 2d DCA 1994), and Kelly v. Kelly, 642 So.2d 800 (Fla. 2d DCA 1994), rev. den. 651 So.2d 1194, the District Court of Appeal, Second District, applied an even more demanding standard for modification than the extraordinary burden expressed in previous cases such as Jablon[v. Jablon, 579 So.2d 902 (Fla. 2d DCA 1991)]. In Grumney, the court held that the "parent seeking the transfer [of custody] bears the `extraordinary' burden to prove a change in circumstances so substantial that the child's continued presence in his current home will be detrimental to him, and that placing him with his other parent is in his best interests." 641 So.2d at 907. The Kelly court similarly required an additional finding of detriment. In other words, the parent seeking a modification was required to prove three matters instead of two: a substantial or material change in circumstances, that the best interest of the child would be promoted by a change of custody, and that a failure to change custody would be detrimental to the child. This stricter standard can be traced back to a line of cases decided long before the advent of shared parental responsibility when one parent, usually the mother, was given "care, custody, and control" of the children. See, e.g., Hutchins v. Hutchins, 220 So.2d 438 (Fla. 2d DCA 1969), cert. den. 229 So.2d 869 (modification requires showing that not only welfare of children will be served by change, but that it will be detrimental to children if custody is not changed).
Other districts have not followed Grumney and Kelly, and the detriment-to-the-child standard is disfavored in the Second District. See Allan v. Allan, 666 So.2d 170 (Fla. 2d DCA 1995). The District Court of Appeal, First District, consistently applies the two-part standard (substantial and material change in circumstances that promotes child's best interests) announced in Zediker v. Zediker, 444 So.2d 1034 (Fla. 1st DCA 1984). See Harp v. Null, 658 So.2d 1218 (Fla. 1st DCA 1995). See also Good v. Good, 664 So.2d 329 (Fla. 3d DCA 1995).
The detriment-to-the-child standard obviously conflicts with Florida's shared parenting law, which extends to both parents the same rights, interests, and control in the upbringing of their minor children. Moreover, it appears to turn the best interests standard on its head. One clearly could demonstrate that a change of custody would promote the child's best interest, thereby helping the child, while not having evidence that the current situation would be detrimental to the child. Furthermore, the detriment-to-the-child standard appears to encourage more acrimony in an already contentious area of child custody litigation, because an additional element of proof, in essence, would require evidence and testimony that the custodial parent was doing and would continue to do a poor job raising the child.
The Florida Bar, Florida Dissolution of Marriage § 11.192, at 11-111 through 11-113 (5th ed.1998) (emphasis added).
I wish to reemphasize the last sentence: "the detriment-to-the-child standard appears to encourage more acrimony in an already contentious area of child custody litigation, because an additional element of proof, in essence, would require evidence and testimony that the custodial parent was doing and would continue to do a poor job raising the child." Id. (emphasis added). That has happened in this case, where the husband asks that if this order is reversed, that it be remanded for further proceedings before the trial court in which the court will be asked to make findings that the existing placement is detrimental to the boys.[9]
*522 The majority opinion cites three cases for the proposition that this court has already endorsed the "detriment" standard, but the cited cases do not stand for that proposition. The majority opinion cites Metcalfe v. Metcalfe, 655 So.2d 1251 (Fla. 3d DCA 1995), and Elkins v. Vanden Bosch, 433 So.2d 1251 (Fla. 3d DCA 1983), see majority opinion at 516, as well as Zugda v. Gomez, 553 So.2d 1295 (Fla. 3d DCA 1989). See majority opinion at 517. None of the three cases states that a showing of "detriment" is required in every modification proceeding. In Metcalfe and Elkins the discussion of "detriment" was in the context of what the evidence had shown under the facts of that specific case.[10] In Zugda there is no discussion of the issue of "detriment" at all. Both Elkins and Zugda repeat the traditional two-part test for change of child custody, see Elkins, 433 So.2d at 1252; Zugda, 553 So.2d at 1296, and the Metcalfe decision states the two-part test inferentially. See 655 So.2d at 1253.
By contrast, there are numerous Third District cases which have repeatedly stated that the test for change of child custody is the traditional two-part testand make no reference to detriment. See Teller v. Richert, 744 So.2d 1230 (Fla. 3d DCA 1999); Skirko v. Skirko, 677 So.2d 885, 887 (Fla. 3d DCA 1996); Good v. Good, 664 So.2d 329 (Fla. 3d DCA 1995); Cardelle v. Cardelle, 645 So.2d 22 (Fla. 3d DCA 1994); Gutierrez v. Medina, 613 So.2d 528 (Fla. 3d DCA 1993); Hill v. Hill, 611 So.2d 618 (Fla. 3d DCA 1993); Sherman v. Sherman 558 So.2d 149 (Fla. 3d DCA 1990); Hunter v. Hunter, 540 So.2d 235 (Fla. 3d DCA 1989); Gaber v. Gaber, 536 So.2d 381 (Fla. 3d DCA 1989); Delgado v. Silvarrey, 528 So.2d 1358 (Fla. 3d DCA 1988); Bragassa v. Bragassa, 505 So.2d 556 (Fla. 3d DCA 1987); Hussain v. Hussain, 493 So.2d 1062 (Fla. 3d DCA 1986); Brush v. Brush, 414 So.2d 37 (Fla. 3d DCA 1982); Adams v. Adams, 385 So.2d 688 (Fla. 3d DCA 1980); Berlin v. Berlin, 369 So.2d 434 (Fla. 3d DCA 1979); Jacobs v. Ross, 304 So.2d 542 (Fla. 3d DCA 1974); Wilner v. Wilner, 167 So.2d 234 (Fla. 3d DCA 1964); Avery v. Heermance, 138 So.2d 775 (Fla. 3d DCA 1962). Plainly a showing of "detriment" is not a required element of a motion for modification in this district.[11]

*523 III.
The fact is that under our existing case law and the existing two-part test, we are obliged to reverse under Elkins. The discussion in the majority opinion regarding "detriment" is entirely unnecessary for the disposition of this case.
The injection of the concept of "detriment" into the law of this district, however, is quite harmful. The correct criterion is "best interest," not "detriment." To say it now for the third and final time, the requirement of a showing of detriment will encourage additional acrimony in child custody modification contests, because that element will "require evidence and testimony that the custodial parent was doing and would continue to do a poor job raising the child." The Florida Bar, Florida Dissolution of Marriage § 11.92, at 11-113.
We should adhere to the traditional two-part test for a change in child custody, and decide the case on that basis.[12]
NOTES
[1] The former wife also challenges the propriety of the trial court's award of "split custody" of the children to the parties. Given the holding reached in this opinion, we need not reach this issue.
[2] The addendum agreement provided that:

The Parties hereby agree that the permanent residence of the three minor children shall remain in Dade County, Florida from the time of the execution of this Addendum until the 2nd day of June, 1998. Neither party shall seek to change the permanent residence of the minor children during the above time period. Subsequent thereto, the children shall be permitted to permanently relocate with the Former Wife to Utah. No subsequent changes of the location of the permanent residence of the minor children from the State of Utah shall be permitted without the express written permission of the Former Husband or in the absence of an order issued by a court of competent jurisdiction.
[3] For examples, when asked whether he believed that it would be detrimental to his children to continue to live in Utah with their mother, the former husband answered as follows:

[A] I think detrimental is a relative term. I don't think Debbie is going to do things that are horrendous to the children. I think that in comparison to what Miami has to offer, and with me with the children in Miami as a model, and with what Park City has to offer, and the environment that they are in Park City, I think, in a relative term, Park City will be very detrimental to the full growth and full potential of the children.
* * * *
Further, Steven Ross, a business partner and witness for the former husband, also corroborated that the former wife's move to Utah precipitated the petition for modification:
[Q] Did you tell [the clinical social worker] that if Debbie were still in Miami, he, Jorge, would not be seeking custody?
[A] Did I tell him that? Probably. I think that, you know, I think Jorge sees the children wanting to, you know, be in Miami, because that's where the children want to be, and thinks it's the best place for the children to be, and the children have indicated they want to be in Miami. So I think the primary reason he is seeking it is to have them in Miami and take advantage of what Miami has to offer.
[Q] Did you tell [the clinical social worker] Jorge is seeking custody because he feels Debbie has put them in a totally different environment from what they were raised in, and this is an issue of urban versus country?
[A] I don't know in those words, but I think that's a good paraphrasing of it.
[4] Both the parties to this action and trial court obviously understood "substantial change in circumstances" to require a showing of detriment, given the "parade of horribles" that the father presented to the trial court in support of his petition for modification of custody. The trial court, however, did not find any such evidence to be credible.
[5] A time which incidentally coincided with the originally scheduled commencement of this proceeding.
[6] The former wife testified as follows:

[Q] [A]nd, Ms. Perez, isn't is true that the oldest children's grades dropped significantly the second quarter of this year?
[A] During the second quarter Christina's and Jon Paul's grades, a couple of them did drop. Yes, they did. However, they have come up to almost the best that they've ever had.
* * *
[A] [T]he reason that those grades dropped, it I may sayis because during this quarter, this quarter was when the [sic] was [sic] the impending trial that was coming up in December, and Jon Paul was being talked to be his father, and he was upset.
* * *
[A] Because after that was done, this next quarter that we are in right now, we got in the progress reports and Christina, for one, has gotten all As and Bs, which she has never had before, and Jon Paul has no Cs, thank you.
The former husband testified as follows:
[Q] Now, Mr. Perez, you received from [the wife], after these report cards came out for the second quarter, some type of progress report from the school?
[A] After the second quarter?
[Q] Yes, sir.
* * *
[Q] [A]nd had the grades gone up for the beginning of the third quarter?
[A] The grades that [the Wife] had shown me had, in Jon Paul's case, the grades had gone up....
[7] Only a few states, most notably, Georgia, Mississippi and Tennessee have statutes which require courts to give deference to the child's choice once the child reaches a particular age. See e.g. Ga.Code Ann. § 19-9-1(3) (1994) (stating that "[i]n all cases in which the child has reached the age of 14 years, the child shall have the right to select the parent with whom he or she desires to live. The child's selection shall be controlling, unless the parent so selected is determined not to be a fit and proper person to have custody of the child."); Miss.Code Ann. § 93-11-65 (1994) (stating that "[I]f the court shall find that both parties are fit and proper persons to have custody of the children, and ... either party is able to adequately provide for the care and maintenance of the children, and ... it would be to the best interest and welfare of the children, then any such child who shall have reached his twelfth birthday shall have the privilege of choosing the parent with whom he shall live."); Tenn.Code Ann. § 36-6-106(7) (1995) (stating that the court shall hear "[t]he reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences for older children should normally be given greater weight than those of younger children.").
[8] Section § 61.13, Fla. Stat. provides as follows:

(3) For purposes of shared parental responsibility and primary residence, the best interests of the child shall include an evaluation of all factors affecting the welfare and interests of the child, including, but not limited to:
(a) The parent who is more likely to allow the child frequent and continuing contact with the nonresidential parent.
(b) The love, affection, and other emotional ties existing between the parents and the child.
(c) The capacity and disposition of the parents to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home.
(f) The moral fitness of the parents.
(g) The mental and physical health of the parents.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.
(j) The willingness and ability of each parent to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) Evidence that any party has knowingly provided false information to the court regarding a domestic violence proceeding pursuant to s. 741.30.
(l) Evidence of domestic violence or child abuse.
(m) Any other fact considered by the court to be relevant.
[9] I agree with the majority that this issue was already placed before the trial court and that the trial court declined to make any such findings.
[10] In Metcalfe, the court said:

Second, there was substantial, competent evidence adduced below supporting the change of child custody ordered by the trial court. This evidence tended to show that there has been a substantial and material change of circumstances since the final judgment of marriage dissolution of such a magnitude that it would be detrimental for the children to remain in the custody of the husband, and that the best interests of the children would be promoted if the wife, who has since remarried, obtained custody of the children.
655 So.2d at 1253 (citations omitted).
In Elkins, the court said:
Here there is no finding that the mother is any less fit a parent than she was when given custody of the children in 1977 and no finding that the children will be detrimented if custody is not changed. Cf. In re Gregory, 313 So.2d 735 (Fla.1975) (child's stated preference to live with father combined with evidence that mother neglected child sufficient to warrant change of custody). Indeed, the sole change of circumstances reflected in the report, adopted by the court, is the children's preference. The law does not give children the unfettered discretion to choose the parent with whom they will live, or gratify the wishes of children at the expense of the rights of a parent.
433 So.2d at 1253 (citation omitted; emphasis in original).
Other Third District cases in which there is discussion of "detriment" based on the facts of the particular case include Walfish v. Walfish, 383 So.2d 274, 276 (Fla. 3d DCA 1980), and Stewart v. Stewart, 261 So.2d 864, 866 (Fla. 3d DCA 1972).
[11] This court has, to be sure, outlined particular factual circumstances when detriment must be shown. See Ritsi v. Ritsi, 160 So.2d 159 (Fla. 3d DCA 1964). But, as the above-cited cases show, a showing of "detriment" is not a legally required element to be applied in all cases.

In Ritsi, the parties agreed that the father would be the custodial parent and the final judgment so provided. The mother originally contemplated that she would spend about half of each year in Florida and half in New York. Within a year, however, the mother had remarried and decided to remain permanently in Florida. She had obtained a suitable home in Miami and was more affluent than the father. The father's care of the children was satisfactory.
This court said that the mother's remarriage and newly acquired affluent circumstances would not be "a controlling factor unless the children are not being properly or adequately cared for." Id. at 164 (citations omitted). "A change of decreed custody is justified in such improved circumstances of the wife when coupled therewith there are circumstances relating to the present custody which are improper and harmful to the child or children so as to make it manifest that a change of custody is essential for their welfare." Id. (citations omitted).
[12] I also believe it would be advisable for us to avoid the vague term, "better off," in this context. See majority opinion at 516. I agree with the underlying premise of that part of the majority opinion, which is that a change in child custody should not be based on the fact that one parent has greater financial or material resources than the other. Ordinarily financial disparities are adjusted by child support, and absent unusual circumstances, are not determinative or even terribly relevant to the child custody determination.

However, when the trial court makes a determination that placement of the child with one parent or the other is in the child's best interest, that is in fact a determination that the child is "better off" with one parent than the other. The unadorned term "better off" is susceptible of more than one interpretation and should be avoided.