309 So.2d 1 (1975)
Nancy M. ANDERSON, Petitioner,
v.
James Robert ANDERSON, Respondent.
No. 45217.
Supreme Court of Florida.
January 8, 1975.
Rehearing Denied March 27, 1975.
Mallory H. Horton, Horton, Perse & Ginsberg, Miami, for petitioner.
Joseph Gassen, Jepeway, Gassen & Jepeway, Miami, for respondent.
DEKLE, Justice.
The present dispute arises out of the child custody provisions of a dissolution of the marriage of the parties. Petitioner cites three decisions of this Court from the 1940s for conflict with the 3rd District's opinion at 289 So.2d 463. Fields v. Fields, 143 Fla. 886, 197 So. 530 (1940); Stewart v. Stewart, 156 Fla. 815, 24 So.2d 529 (1946); and Hurst v. Hurst, 158 Fla. 43, 27 So.2d 749 (1946).
The trial court found that respondent-husband was entitled to the marital home, and this finding is not challenged here. As to the issue of custody, the trial court opined:
"The Court further finds and concludes that both the Petitioner and Respondent *2 are in all respects fit and proper persons to have custody of the two minor children of the parties.... Each of the parties is an assistant national bank examiner for the United States Government at substantially equal salaries. The financial affidavits filed before the Court establish that if the Petitioner, Nancy M. Anderson, were to have custody of the minor children there would be insufficient monies to support them in the heretofore established manner, whereas, if James Robert Anderson has custody of the said minor children, the said children could be supported in the heretofore established manner through the contribution to their support hereinafter set forth and could remain in their home, where the Court finds that the Respondent, James Robert Anderson could in all respects provide for the physical and emotional needs of the said minor children."
These are twin girls, 2 1/2 years of age at time of final hearing in 1973, born of a 1970 marriage which foundered in October, 1971. The father is 45, the mother 25; his third and her first marriage. Both the husband and the wife as bank examiners were required to be out of town intermittently in discharging their duties. The area of their duties varied from Ft. Pierce, Florida, on the north, to Key West on the south, and as far west as Naples, Florida, and occasionally out of the state. The parties were equally required by the necessities of their employment to engage baby-sitters from time to time to take care of the twin daughters.
The trial court awarded custody of the twin girls to respondent-father, with visitation rights to petitioner-mother, directing that the mother pay $25.00 per week child support, but during the time that the girls stay with her, that respondent-father pay $40.00 per week child support to her. She was on the home loan, but the home was awarded to the father, a basis recited by the learned chancellor for the award of the children to the father. The mother urges that custody should have been awarded to her.
In Fields it was found that both parents were fit to have custody. The chancellor had awarded custody to the father of the three children of the marriage, aged three, five and seven years. This Court reversed, giving the mother total custody of the youngest child, and giving her custody of the older children nine months of the year. In so holding, this Court relied upon language from an Alabama case which provided:
"`Other things being equal, ... the mother of infants of tender years [is] best fitted to bestow the motherly affection, care, companionship, and early training suited to their needs.'" (197 So. 531)
F.S.A. § 61.13(2) providing for equal consideration of the father in the award of custody is not inconsistent with this rule of law historically enunciated by the courts.
In Stewart the trial court awarded custody of a two-year-old baby girl to the parents, alternating custody two months at a time. This Court reversed, directing the trial court to make further findings, and if it found the mother not to be an unfit parent, to give custody of the child to the mother. The Fields rule was relied upon.
Teel v. Sapp, 53 So.2d 635 (Fla. 1951), is pertinent here. There we observed: (p. 635)
"The little girl, now two years old, had been placed with the mother under the decree of divorce and there she should remain. We have often said that children of tender years should be put in the care of their mothers, who are by nature better equipped to rear them. Of course an exception is made in the case of a mother who is proved morally unfit... ."
We reversed the chancellor's award to the father.
*3 Hurst was a reversal by our Court of an award of custody of a three-year-old child of the parties which had alternated custody between the parties on a six-month basis. Again citing the Fields rule, we held that custody should be granted to the mother with reasonable visitation rights being granted to the father where their circumstances were equal.
Brust v. Brust, 266 So.2d 400 (Fla.App. 1st 1972), turned on a little different circumstance, namely, the mother's difficulty in coping with three rambunctious young boys, better controlled and disciplined by their father who was correctly given custody. Numerous other cases support a father's custody in proper cases in the best interests and welfare of the children.[1]
Respondent urges that there is no conflict with these cases because the determination of custody has now swung away from favoring the mother, he says, to a pure determination of what is best for the child. Moreover, respondent urges, the chancellor in this case found that things were not actually equal between the parties, that although each parent was fit, the children would be in a better position living with their father because such an arrangement would be less disruptive to the children and would better support their existing lifestyle in the home to which they had been accustomed which was awarded to the father.
The 3rd District affirmed, finding sufficient evidence in the record to support the trial court's decision. The district court apparently considered the general rule, still viable despite the "equal consideration" set forth in F.S.A. § 61.13(2), that, other essential factors being equal, the mother of infants of tender years should receive prime consideration for custody. "Equal consideration" to a father resulting in a finding of "other factors being equal" still invokes the traditional rule for prime consideration being given the mother for custody of infants of tender years. Of course this is not a "conclusive presumption," as observed in subsequent Goodman v. Goodman, 291 So.2d 106 (Fla. App.3d 1974), by the sage and sagacious Judge Norman Hendry, able jurist for 30 years.
The 3rd District concluded sub judice the father should have the children under its "overall view of this record," thereby sustaining the chancellor's valid exercise of discretion. We are not permitted to disturb the exercise of a sound discretion but we are impelled to point out the above clarification of the statute (§ 61.13(2)) and to reject the quoted trial court language which seems to select an economic and financial basis for an award of custody to the father.
The 3rd District's opinion continues to recognize also the continuing preference, for the children's benefit, of a proper and available mother for their care where the children are of tender age, in otherwise equal circumstances, stating at page 464 of 289 So.2d:
"Undoubtedly, even today, a chancellor must take into account [in exercising his discretion] the fact that the children are of tender years, which might tip the scales in some degree in favor of the mother, particularly if she was nonworking and available to be with the children full time. However, just because everything else being equal, there should be no conclusive presumption that children of tender years must always be placed in the custody of the mother." (Brackets by Third District)
Circumstances sometimes support an award to the father as aforesaid, but such circumstances must be those same important considerations of the child's best interests, care and guidance as are required *4 to support custody in the mother and not solely financial and physical surroundings which are better than those of the mother. The same principle would apply as well in an inverse situation where the mother enjoyed more financial security but the father was the better parent for the children. And, of course, circumstances can change which will justify a change in custody.[2]
In determining custody, principal reliance cannot be placed upon the material and economic benefit and welfare of the children rather than their personal, emotional and social welfare and stability. A father's greater financial position is not a dominant factor in weighing the still-existing and recognized rule of preference of custody of infants of tender years in the mother when all else is equal. Indeed, if financial security is the problem, the solution is not in simply placing the children with the more financially secure parent; rather it is incumbent upon the chancellor to see that such a financially fortunate parent provides the necessary monetary support for the children in order to eliminate such an imbalance, if the personal welfare of the children lies with the other parent.[3]
We do not view the "all other things being equal" rule as including an exact financial balance; indeed, there seldom is. In our world of over-emphasis on material things, we must take care that economic status does not control or dominate the upbringing of our children, for we have seen too much of the tragic results of affluence and over-indulgence. One result is the recent rebellion of many of such over-indulged and undisciplined children as they arrive at maturity and rebel against the society in which they live, often with disastrous and tragic results to themselves as well as their (our) society. Encouraging is the present turnabout we think we see in these same "children," now adults, on the campuses of America and in other strata of the young, returning to the real values of life.
Moral influences and training  not mere financial security  should be paramount in the all-important decision of a chancellor in determining custody. The exercise of this vital judgment is often pivotal in the lives of young children. The very course of their destiny is in the balance. The child's future life may well be determined by that decision and it cannot rest upon the principal ground of material comforts or solely upon financial considerations; these "sinking sands" fade away all too soon; the lasting influences are the moral and spiritual values of life instilled by a proper parent.
It is to these basic values then that the chancellor must look in determining what is "best" for the welfare of the child; the chancellor must remain on guard against being overly influenced by the material values, just as he must weigh with reservation the testimony of a child of discretion as to the child's preference to live with one or the other parent. It is the ultimate welfare of that child as a whole which must be carefully weighed and not simply a preference, or what might be a more comfortable circumstance temporarily.
On the ground, however, that the overall evidence does support the chancellor's discretion which should not be disturbed in the absence of a clear abuse, the writ of certiorari heretofore entered is hereby
Discharged.
It is so ordered.
ADKINS, C.J., and ROBERTS, McCAIN and OVERTON, JJ., concur.
ERVIN, J., dissents.
NOTES
[1] Curtis v. Curtis, 248 So.2d 204 (Fla.App.2d 1971); Edison v. Edison, 230 So.2d 184 (Fla.App. 1st 1970); Pacheco v. Pacheco, 246 So.2d 778 (Fla. 1971); Green v. Green, 254 So.2d 860 (Fla.App. 1st 1971).
[2] Goodman v. Goodman, 291 So.2d 106 (Fla. App.3d 1974).
[3] Posner v. Posner, 257 So.2d 530, 537 (Fla. 1972).