395 So.2d 188 (1981)
Diana Christine DYKES, Appellant,
v.
Roger Francis DYKES, Jr., Appellee.
No. 79-2.
District Court of Appeal of Florida, Fifth District.
February 4, 1981.
Rehearing Denied March 16, 1981.
*189 Francis B. Burch, J. Edward Davis and J. Calvin Jenkins, Jr., of Weinberg & Green, Baltimore, Md., and Kenneth A. Studstill, Titusville, for appellant.
Kenneth W. McIntosh of Stenstrom, Davis, McIntosh & Julian, and Marcia K. Lippincott, Sanford, for appellee.
ORFINGER, Judge.
Appellant questions a final judgment in a dissolution proceeding awarding custody of the young child of the marriage to the father. We affirm.
Appellant raises three points on appeal: (1) did the trial court abuse its discretion in awarding custody to the father instead of to the mother, (2) did the court have jurisdiction to make a custody award under the Uniform Child Custody Jurisdiction Act,[1] and (3) was there such judicial impropriety and undue influence as to prevent the trial court from rendering an independent and unbiased decision?
Disposing of the jurisdictional question first, the record clearly reveals jurisdiction in the Florida courts. The child was born in Florida on November 18, 1974, and had lived with his parents in Florida for more than a year until December 15, 1975. The next six months were spent in Maryland (appellant's home) while the father was preparing to enter Pennsylvania State University; they then lived in Pennsylvania for about one and one-half years while the appellee was enrolled in the University as a full time out-of-state student. The paternal grandparents lived in Florida, while the maternal grandparents lived in Maryland. When the marriage broke up, the father returned to Florida with the child. In awarding temporary custody to the father, the trial court found that Florida was the child's home state and that it was in the child's best interest that Florida assume jurisdiction.
*190 Appellant insisted that Maryland was the child's home state, and after the Florida proceedings had commenced and she had not prevailed in the temporary custody hearing, she filed a dissolution proceeding in Maryland, requesting custody of the child. The Maryland court declined to exercise jurisdiction and deferred to Florida. There is substantial evidence justifying the trial court's conclusion that Florida had jurisdiction.
The child of the parties was three years old when the dissolution proceedings were filed. Appellant contends that she is a fit and proper person to have custody of her child and that under the "tender years" doctrine she should have been given preference in the custody award. She therefore asserts that the trial court abused its discretion in awarding custody to the father.
Although section 61.13(2)(b), Florida Statutes, requires that the father of the child shall be given equal consideration as the mother in awarding custody, it appears to be the law of this state that other essential factors being equal, the mother of an infant of tender years should receive prime consideration for custody. Dinkel v. Dinkel, 322 So.2d 22 (Fla. 1975). In his extensive findings of fact the trial court recognized this principle, but found that the essential factors were not equal and that the "evidence militates strongly in favor of the father."
The entire voluminous record in this case has been reviewed, and if we were the triers of fact we might very well have reached an opposite result on the custody issue. Nevertheless, this does not give us the unbridled power to reverse the trial judge.
[T]his court cannot, in any type of case, overturn the decision of a Chancellor made in the exercise of his judicial discretion in the absence of a clear showing of an abuse thereof; and, in a child custody case, the opportunity of the Chancellor to observe the demeanor and personalities of the parties and their witnesses and to feel forces, powers and influences that cannot be discerned by merely reading the record, assumes a new importance because of the many intangibles that must be evaluated in deciding the delicate question of child custody. Grant v. Corbitt, 95 So.2d 25, at 28.
Dinkel, 322 So.2d at 24.
Since there is competent, substantial evidence to support the findings of the trial judge, we cannot say that the trial judge abused his discretion in finding that the award of custody to the father rather than to the mother was in the best interest of the child. Maran v. Maran, 384 So.2d 950 (Fla. 4th DCA 1980); Marshall v. Marshall, 375 So.2d 1082 (Fla. 1st DCA 1979).
In an amended motion for rehearing or new trial after the final judgment, appellant contended that because appellee's father was a circuit judge in the circuit where the action was heard, and because of his alleged "intervention" in the proceedings, the appellee was not afforded justice and the ultimate custody determination was "fore-ordained". The fact that appellee's father was a judge in the same circuit was known to all parties and the trial judge before, during and after the trial of this cause. No change of venue was ever requested. At no time did appellant ever ask the trial judge to recuse himself or even suggest that the trial judge might be embarrassed or otherwise inhibited in his rulings.
The trial judge openly discussed the matter with the parties and their attorneys and at the beginning of the trial offered to recuse himself if either party felt that because appellee's father was a local judge a fair trial would not be had. No one took him up on that offer. There are no allegations of impropriety directed at appellee's father  only innuendos, insinuations and conclusions. Moreover, and most important in our decision, is the complete absence of any allegation or intimation that there was any attempt to influence the trial judge or that the trial judge was in fact influenced by any consideration outside of the record.
The judgment appealed from is affirmed.
AFFIRMED.
*191 FRANK D. UPCHURCH, Jr., J., concurs.
SHARP, J., concurring in part and dissenting in part with opinion.
SHARP, Judge, concurring in part and dissenting in part.
I concur with the majority on the third issue, I agree with the result only on the second issue because of the unique circumstances in this case, and I disagree on the first issue.
Contrary to the statement in the majority opinion, Florida was not the "home" state[1] of the child at the time the custody proceeding commenced and it should have declined jurisdiction initially.[2] The parties and the child left Florida in 1976 and resided in Maryland for 6 months. Then they lived in Pennsylvania for a year and a half. The father was a student at the University and the mother worked part-time and took care of the child. Pennsylvania or possibly Maryland was the child's "home" state under the Act. Hegler v. Hegler, 383 So.2d 1134 (Fla. 5th DCA 1980); Detko/Roberts v. Stikelether, 370 So.2d 383 (Fla. 4th DCA 1979).
The father returned to Florida for a "visit" with his parents and he took the child with him for that purpose. The mother came to Florida in late November for two months, tried unsuccessfully to reconcile with the father, and unable to do so, she then returned to Maryland with the child. On November 21, 1977, without the mother's knowledge, the father appeared before the juvenile court in Brevard County, and obtained an ex parte judgment declaring that his own child was "dependent" and granting him custody.[3]
Within a few days of each other the mother and father filed suits for dissolutions and sought custody of the child, she in Maryland and he in Florida. The Florida court forwarded to Maryland a "Request for Assistance" asking that court to order the return of the child to Florida for determination of the custody issue, citing as authority the highly irregular "dependency order" of the juvenile court. The Maryland court gave the Brevard dependency decree the "same effect" as a custody order of a Maryland court,[4] and based on that order alone, it declined to accept jurisdiction, and ordered the mother to return the child to the father in Florida.
The child and mother returned to Florida and the father was given temporary custody of the child. The mother filed an answer in the Florida proceeding and a counter-suit for dissolution in which she also sought custody of the child. Since Maryland, a possible "home" state, had declined to take jurisdiction, the Florida court then had discretion to proceed under section 61.1308(1)(d)1 of the Act, and subject matter jurisdiction attached.
I disagree with the majority on the first issue because I think this case is in conflict with Anderson v. Anderson, 309 So.2d 1 (Fla. 1975) and Dinkel v. Dinkel, 322 So.2d 22 (Fla. 1975). At the time of this proceeding, the child was three years old, and prior to the separation of the parties, the mother had assumed the primary role in his care. She was not shown to be an improper or uncaring parent in any way.
The trial court stated that it was aware of the "tender years" doctrine, but in this case it found the scales balanced heavily in favor of the father. Normally the trial court's conclusions in custody matters should not be disturbed. In Re Gregory, 313 So.2d 735 (Fla. 1975); Johnson v. Johnson, 293 So.2d 770 (Fla. 1st DCA 1974). However the factors used by this trial court to weight the scales in the father's favor are in my opinion insufficient.
Early in the proceedings the trial court said the mother had been the more stable *192 parent. But at the final hearing the judge chastised her because she indicated she wanted to return to her home in Maryland, work part-time while living with her parents, and work towards her college degree. The court said the mother's goal demonstrated "a lack of purpose" in her life. But this is precisely the manner and life style the father had been living during the time he had temporary custody of the child; and he stated a similar plan for his future.
The trial court stated it was reluctant to see Florida lose jurisdiction over the child as it would if the child were returned to Maryland. Surely the day has come when Florida courts recognize that sister states also have effective legal systems and the departure of a child from our borders does not expose him to automatic danger.
The trial court also weighed and considered the relative merits of the paternal and maternal grandparents, and determined the paternal grandparents were superior. Both father and mother are young people who have not completed their educations, and they will require some help from their own parents. I question whether weighing the grandparents is ever a proper basis upon which to make a custody award,[5] but even if it is, the record completely fails to show that the mother's family is any less able, stable or willing to provide this backup support than the father's.
Finally, the trial court noted the "improvement" the child had made since he was placed in the father's temporary custody in Florida. The custody litigation in Florida consumed more than a year's time. The child needed a "stable" environment, and he had been upset by the marital discord and being snatched back and forth between parents. However, the growth and progress of a child between the ages of three and four is normally rapid and dramatic. The parent who has temporary custody should not be credited automatically with this natural progress when it is not clear similar progress would not be made with the other parent, particularly where the temporary custody was obtained under such questionable circumstances.
The record in this case does not balance heavily in favor of either parent;[6] and since the "tender years" doctrine is apparently still the law in Florida, the mother should have been given permanent custody of this child. Hoffman v. Jones, 280 So.2d 431 (Fla. 1973).
NOTES
[1] Section 61.1302, et seq., Florida Statutes (Supp. 1978).
[1] § 61.1306(5), Fla. Stat. (1979).
[2] § 61.1308(1)(a), Fla. Stat. (1979).
[3] The circuit court reheard the issue of temporary custody on February 13, 1980, when both parties were before the court. The court again granted temporary custody to the father.
[4] In point of fact it gave the Brevard decree far more effect than a Florida court would have, since it was clearly improper on its face.
[5] Cf. Robinson v. Robinson, 333 So.2d 526 (Fla. 2d DCA 1976) (grandparents living nearby not controlling).
[6] During the custody hearing, the judge stated several times that the mother and father were equally fit persons to have custody. See Record pp. 843, 853.