400 So.2d 126 (1981)
In re the Marriage of Betty J. KERSHNER, Formerly Betty J. Crocker, Appellant,
v.
Stanley G. CROCKER, Appellee.
No. 80-992.
District Court of Appeal of Florida, Fifth District.
June 17, 1981.
Michael R. Walsh, Orlando, for appellant.
J. Russell Hornsby of the Law Offices of J. Russell Hornsby, Orlando, for appellee.
FRANK D. UPCHURCH, Jr., Judge.
The appellant/wife questions the award of custody of the parties' minor child to the husband in a judgment of dissolution of marriage. We AFFIRM.
Prior to trial, the parties stipulated that all matters in dispute had been settled except the issue of custody. As part of the stipulation, the marital home was transferred to the husband.
The court found that while both parents were fit, custody should be awarded to the husband. The trial judge's finding was based on several factors including his belief that it was important to maintain continuity in the child's home environment, to have the child remain in the same school and continue her friendships and to have the influence of her paternal grandmother. The trial judge was also concerned about the potentially negative influence of the maternal grandmother in whose house the wife was then living. Another factor influencing the court was the brother-sister relationship that existed between the child, Tresa, age five, and her father's younger brother, age six, who had lived with them since her birth.
Appellant advances two arguments in support of her contention that the trial court erred in failing to award her custody: 1) the "tender years presumption" and 2) that the trial judge improperly used the placement of the child as a tool to facilitate a reconciliation.
Section 61.13(2)(b), Florida Statutes (1979), provides that when considering all relevant factors in the determination of child custody and visitation, the father of the child shall be given the same consideration as the mother. In Anderson v. Anderson, 309 So.2d 1 (Fla. 1975), the Florida Supreme Court announced that this statutory mandate of equal consideration is not inconsistent with the "tender years presumption." Rather, it was still the law in Florida that "other essential factors being equal, *127 the mother of the infant of tender years should receive prime consideration for custody." Dinkel v. Dinkel, 322 So.2d 22, 24 (Fla. 1975). See also Corvison v. Corvison, 362 So.2d 323 (Fla. 3d DCA 1978); Ross v. Ross, 321 So.2d 443 (Fla. 3d DCA 1975). In other words, where the equal consideration given to the father in determining child custody results in a finding that both parties are equally fit to have custody, children of tender years should be awarded to the mother. Klavans v. Klavans, 330 So.2d 811 (Fla. 3d DCA 1976), cert. dismissed, 353 So.2d 676 (Fla. 1979).
The above cases do not enumerate the essential factors which a court should specifically consider. However, in 1975, the Legislature amended section 61.13 to include some of the criteria to be considered when determining the welfare and best interests of the child:
(3) For purposes of custody, the best interests of the child shall be determined by the court's consideration and evaluation of all factors affecting the best welfare and interests of the child, including, but not limited to:
(a) The love, affection and other emotional ties existing between the parents and the child.
(b) The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the educating of the child.
(c) The capacity and disposition of the parents to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home.

(f) The moral fitness of the parents.
(g) The mental and physical health of the parents.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.
(j) Any other factor considered by the court to be relevant to a particular child custody dispute. (Emphasis added.)
In this case, obviously the trial court found these factors to be unequal as between the parties. See Dykes v. Dykes, 395 So.2d 188 (Fla. 5th DCA 1981); Maran v. Maran, 384 So.2d 950 (Fla. 4th DCA 1980).
There are also other factors which place the trial judge in an infinitely superior role for the determination of custody. The appellate court is limited to the record while the trial judge has the opportunity to observe the child and the parents and the interplay between them. We suspect that when Solomon threatened to cleave a child in two to solve the problem of choosing between two women who claimed the child, he learned as much from their faces as he did from their testimony. Although these unrecorded factors are nebulous and impossible for a trial judge to articulate even if he is aware of their influence, they give him a unique advantage over a reviewing court. Therefore, we are most reluctant to overrule a custody decision except where an error is apparent and compelling. Such is not the case here.
The second argument advanced by appellant is that the judge awarded custody of the child to the husband to induce her to reconcile with her husband and preserve the marriage.
After the court announced its ruling on custody, there was a colloquy among the wife, her counsel and the court. During that discussion, the court expressed a hope that the wife and husband could get back together. A fair reading of these comments in context does not indicate that placement of the child with the father was *128 determined upon the judge's hope of reconciliation or that the placement was being used as a tool to facilitate a reconciliation. Rather, the comments simply appear to be a personal expression of hope without any legal significance.
Here, the trial judge was forced to make a choice between two parents, both of whom he concluded were fit. Had the parties been able to reconcile, not only would the burden of his decision be lifted from him, but the anguish that would surely flow to the child and the parties would have been stemmed. We believe that most trial judges in custody matters wish there were options other than selecting between the parents. While he may be confident of the correctness of his decision, a trial judge would be most insensitive if he did not perceive the turmoil and pain a small child will experience who is unable to comprehend the division between its parents. He would be callous indeed if he did not understand and anticipate the terrible loss which the unselected parent faces, especially one who is convinced that justice has gone astray. An expression of hope for reconciliation by the trial judge may reveal compassion for those his decision will affect, but it certainly is not error.
AFFIRMED.
COWART, J., concurs.
SHARP, J., dissents with opinion.
SHARP, Judge, dissenting.
I dissent in this case because application of the "tender years" doctrine[1] should have resulted in awarding custody of Tresa, a five year old child, to her mother. Until the Florida Supreme Court changes this doctrine or rule, the lower courts are bound by it,[2] and if it has any substance, the appellate courts have a duty to require that substantial factors be present in the record to justify an award of custody of a young child to its father rather than to its mother. The factors relied upon in the majority opinion and by the lower court (continuity of the home environment and the influence of the paternal grandmother) are primarily "make-weights", and not sufficient to counter the substantial evidence which indicated that the mother was the better custodial parent. Failure to accept the duty to review custody awards makes custody judgments not appealable for practical purposes.
This child had been primarily cared for by her mother, Betty, since birth. The father, Stanley, worked long hours, and had never had the primary care of the child. He intended to continue his work schedule. The psychiatric reports in the record indicate that Betty is a mature and capable parent, and that her relationship with Tresa is a good one.
Since the parties separated, Tresa was living with Betty in the home of her maternal grandparents. Stanley refused to allow them to live in the marital home. While in her mother's sole custody, Tresa showed no signs of anxiety or upset. Tresa's nursery school and kindergarten teachers said Tresa is a happy, well adjusted child, before as well as after the separation of the parties. Clearly Tresa's relationship with her mother was the most important factor in maintaining "continuity" in her environment  not the particular house or neighborhood. Continuity of schools and friends for a child of this age is normally of minimal importance or significance.[3] Nor was it shown to be of any major importance to Tresa.
NOTES
[1] Anderson v. Anderson, 309 So.2d 1 (Fla. 1975).
[2] Hoffman v. Jones, 280 So.2d 431 (Fla. 1973).
[3] Tresa was in kindergarten and would be going to first grade next year, in any event.