627 So.2d 548 (1993)
Randolph James SCHWEINBERG, Appellant,
v.
Sandra Faye CLICK f/k/a Sandra Faye Schweinberg, Appellee.
No. 92-2768.
District Court of Appeal of Florida, Fifth District.
November 19, 1993.
Rehearing Denied December 14, 1993.
*549 Thomas E. Shine, Melbourne, for appellant.
Robin M. Petersen, Melbourne, for appellee.
Sandra Faye Click, pro se.
THOMPSON, Judge.
Randolph J. Schweinberg ("Schweinberg"), appellant and former husband, appeals a modification of a final judgment of dissolution of marriage which changed custody of two minor children, to Sandra Faye Click ("Click"), appellee and former wife. We reverse the trial court.
Schweinberg and Click married on 26 January 1973 in Melbourne, Florida, and divorced on or about 2 December 1986 in Horry, South Carolina. The couple separated on or about 12 March 1986 and lived apart until the date of the final judgment. All of their children lived with Schweinberg after Click moved out. At the time of the divorce, Schweinberg was a sergeant in the United States Air Force stationed in South Carolina, but Florida was his permanent residence. He was awarded permanent custody of all three of their minor children plus Click's child from a prior marriage. Prior to the time of the divorce, Click had moved to Altamonte Springs, Florida. The South Carolina court awarded reasonable visitation with all four children and reserved ruling on the amount of child support that Click would be required to pay to Schweinberg. The South Carolina judgment did not set up a detailed visitation schedule and no supplemental order setting child support was ever entered.
On 19 December 1991, Click filed a petition for modification of final judgment and requested that Florida be declared the minor children's home state. Click petitioned to change the custody of Randolph James Schweinberg, II ("Randy II") and Russell William Schweinberg ("Russell"). The other children were emancipated. Additionally, she moved for contempt proceedings against Schweinberg for not allowing visitation and requested that a visitation schedule be ordered. Schweinberg responded to the petition. He denied that custody should be changed. He agreed that Florida should be the home state, since all the parties lived in Florida, but denied that there were grounds for the contempt motion. Schweinberg did admit that he would not allow overnight visitation because Click's new husband was a convicted felon. Click's husband had been convicted of lewd and lascivious behavior on a female child and he was under court supervision for 15 years. Schweinberg did not feel the children would be in a safe environment if they were allowed overnight visitation. A hearing on all pending issues was held on 7 September 1992.
*550 The trial court heard testimony from several witnesses. Some of the witnesses testified to extraneous matters which may have been the basis for the trial judge's ruling, however, if the trial judge did consider them, he did not state or write them as reasons for his change of custody. The trial judge interviewed the two minor children affected by the petition and heard closing argument of counsel. The court then stated:
I can't tell you how frustrated  you know, how frustrated I was this morning, having listened to such trivial facts that have put the children at such disadvantage not being able to see their mother.
I think the actions of the father in denying the visitation under these circumstances were arbitrary and capricious, and were, in essence, a retaliation for the complaint she made to HRS [Department of Health and Rehabilitative Services].
For that reason I'm going to change custody to the mother. The child  incidentally, the handicapped child has been belittled. I make a finding of fact regarding that. And also the children have expressed disappointment not being able to see their mother.
I change the custody and ask the attorneys to work out some sort of reasonable visitation privilege.
The oral pronouncement was later reduced to a written order. Because the reasons the court used are not sufficient to modify the children's custody, the order must be reversed.

Order Of The Trial Court
The trial judge's order is the focal point of our inquiry. The order details the reasons the court changed custody. If those reasons are invalid, the order was entered in error, regardless of the testimony that the court heard. Therefore, the order of the trial court, in pertinent part, is set out:
FINDINGS OF FACT:
A. That the actions of the Former Husband, RANDOLPH JAMES SCHWEINBERG, in denying the Former Wife, SANDRA FAYE CLICK, visitation with the minor children, to wit: RUSSELL WILLIAM SCHWEINBERG, born November 18, 1977; and RANDOLPH JAMES SCHWEINBNERG II, [sic] born October 15, 1980; were arbitrary and capricious.
B. That the actions of the Former Husband were in retaliation for the Former Wife reporting him to the Florida Department of Health and Rehabilitative Services.
C. The Court finds from in camera discussion with the two minor children, that the children of the parties were disappointed at being denied visitation with their natural mother, Former Wife, SANDRA FAYE CLICK by the Former Husband, RANDOLPH JAMES SCHWEINBERG.
D. That the minor child, to wit: RANDOLPH JAMES SCHWEINBERG II, [sic] who suffers from Cerebral Palsy, has been belittled while in the custody of the Former Husband, RANDOLPH JAMES SCHWEINBERG.
These are the only reasons the trial court states as a basis for the change of custody. The court will address each reason seriatim.

Standard of Review for the Trial Court in a Change of Custody Case
The trial court does not have the same discretion to modify a custody order as it did in entering the original decree. Zediker v. Zediker, 444 So.2d 1034 (Fla. 1st DCA 1984) (quoting Teta v. Teta, 297 So.2d 642 (Fla. 1st DCA 1974)). In fact, the noncustodial parent seeking to modify the award "carries an extraordinary burden" and must rely only on changes occurring after the original final judgment of dissolution is entered since that judgment is res judicata as to all other matters involved in the case at that time. Zediker, 444 So.2d at 1036 (citing McGregor v. McGregor, 418 So.2d 1073, 1074 (Fla. 5th DCA 1982)). The evidence presented in this case must establish changes which have come about in the lives of the children during the six years they lived with their father. Nothing that occurred prior to the dissolution is relevant. The focus is on changes post dissolution and how those changes have adversely affected the children. Changes not affecting the children, do not necessitate a change in custody.
*551 This court has held in order to warrant a change in custody, the noncustodial parent must establish by
competent, substantial evidence that (1) there has been a substantial or material change in the condition of the parties and (2) the best welfare of the child[ren] will be promoted by the change in custody.
Stricklin v. Stricklin, 383 So.2d 1183, 1184 (Fla. 5th DCA 1980). Absent this showing, there can be no change. As will be discussed, Click did not meet this burden.

Reasons Listed By The Trial Judge As A Basis For Change
The testimony presented showed that Click had visitation with the children until the time that she reported Schweinberg to HRS. The basis of the report was the actions of the children's paternal grandmother and stepmother. The children's grandmother lived with the family and, during the summer of 1991, she was alleged to have belittled Randy II. Randy II suffers from cerebral palsy and walks with difficulty. Kirsten Nicole Schwienberg ("Nicki"), Randy II's sister, testified that on one occasion she saw her grandmother get down on the floor, jump around, call Randy II a baby and make fun of him. Nicki said she also saw the grandmother pull Randy II's hair and hit him. The stepmother was alleged to have yelled at Randy II. This incident occurred in Schweinberg's presence and he said nothing.
When Click heard about the treatment of her son, she notified HRS on 16 November 1991. On 17 November 1991, Schweinberg stopped letting the children visit Click. Ultimately, HRS found there was no basis for the allegations and allowed the children to remain in Schweinberg's custody without supervision by HRS. Click testified that Schweinberg told her he was going to put Randy II in an institution and she would no longer be able to visit her children. He told her that she "blew it" by calling HRS. Up until this incident, Click was allowed visitation including overnight visitation.
First, this court notes that there was no structured court ordered visitation, which Schweinberg was obligated to follow, in the final order of divorce. Absent court ordered structured visitation, visitation was left for the parties to resolve. Until November 1991, there had been no problem with visitation. In fact, even though Click's new husband had been convicted of the felony of lewd and lascivious behavior on a female child, Schweinberg had allowed visitation.
It has been held that mere frustration of visitation alone is insufficient to change custody. Crippen v. Crippen, 508 So.2d 1339 (Fla. 4th DCA 1987). In Crippen, the mother frustrated the father's visitation by removing the children from Florida and taking them to New York. The court, while not condoning her behavior, stated:
Certainly, willfully depriving a noncustodial parent of visitation rights is a serious matter. It requires the court's prompt attention and is a factor to be considered in a custody dispute. It cannot, however, constitute the sole reason for a change of custody. .. . There must be evidence that the interest of the children will be promoted by a change of custody.
Id. at 1340. The trial court's proper remedy is structuring visitation to benefit all parties; enabling them to be aware of their rights and obligations to each other and to the children during visitation. A change of custody from one parent to the other is an inappropriate remedy.
As to the desire of the children to see their mother, the trial court found that they were "disappointed" they could not visit their mother. Although there is conflict in the trial transcript about visitation,[1] the uncontroverted facts show that visitation was not an issue until November, 1991. Up to that point, the children and Click had visitation without dispute. Schweinberg did not interfere in visitation. Obviously, the children want to visit with their mother and this is encouraged by Florida law. See § 61.13, Fla. Stat. (1991). The children's wishes alone, *552 however, cannot support a change in custody. Elkins v. Vanden Bosch, 433 So.2d 1251 (Fla. 3d DCA), review dismissed 438 So.2d 831 (Fla. 1983); Garvey v. Garvey, 383 So.2d 1172 (Fla. 2d DCA 1980). There is additional conflict in the record because Randy II, after speaking with the judge in camera, wrote the trial judge and recanted his previous testimony and asked that he be allowed to remain with his father. If credence is going to be given to the child's wishes, certainly the child's wishes must be unambiguous and consistent. This disappointment is not a material change in circumstance justifying a change in custody. See Zediker, 444 So.2d at 1036.

Belittlement of Randolph James Schweinberg, II.
The last reason the court gave for the change of custody of Randy II was his belittlement by his natural grandmother. This belittlement occurred on one occasion (reading the trial transcript most favorably to Click) and was investigated by HRS. They found no factual basis for the accusation. Even if true, it was not done by Schweinberg and can not be repeated since the natural grandmother died during these proceedings. There was never an allegation that Schweinberg belittled any of his children. Specifically, the testimony was that he took Randy II to all of his doctor's appointments and helped him with his homework to make sure he stayed current in school. Schweinberg has had custody of the children for six years and they have not had any problems until November 1991, when the HRS investigation was initiated by Click. This incident is not a reason to change custody.

Russell William Schweinberg
There was no evidence presented to support a change of custody of Russell from his father to his mother. The testimony was that he is an honor student who is doing well in school and he has no problems. Click presented no allegations showing a change in circumstances had occurred, other than that Russell might learn to live off the system from his father and his father had Playboy magazines in the house. (Each of these facts was contested by the father.) It might be argued that it would be in the best interest of Randy II, to have his brother with him because they have a very close relationship. This issue was not addressed by the judge's order and there is nothing in the record to show that it would be in Russell's best interest to change custody. No findings were made that there was a substantial and material change of circumstances and that a change in custody was in the best interest of this child. Culpepper v. Culpepper, 408 So.2d 782 (Fla. 2d DCA 1982).
The record does not show, and the court did not find, that any changes which may have occurred were detrimental to the children, nor did the court find that one parent was more fit to have custody of the children. See Dinkel v. Dinkel, 322 So.2d 22 (Fla. 1975). Absent such a finding, a change was improper.

Conclusion
Trial courts are granted a great deal of deference in child custody matters because they are able to see and judge the witnesses much better than an appellate court. See Kershner v. Crocker, 400 So.2d 126 (Fla. 5th DCA 1981). This deference is tempered by the principle, however, that the record must support the trial court's finding. See Deakyne v. Deakyne, 460 So.2d 582 (Fla. 5th DCA 1984). Here the record does not support the trial court's order. The order changing custody is quashed and the case remanded to the trial court to place the children with Schweinberg, to schedule reasonable visitation and to consider the issue of child support from Click.
REVERSED and REMANDED.
HARRIS, C.J., and GOSHORN, J., concur.
NOTES
[1] The mother testified that she was denied visitation after the HRS investigation and Schweinberg said he would allow supervised daytime visitation, but he would not sanction overnight visitation.